**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**CV 14-3827**

**MAUSKOPF, J.**

BARRY STOLTZ and ALLAN CHANG, on behalf
of themselves and others similarly situated,

Case No.:  **ORENSTEIN, M.J.**

   **Plaintiffs,**

**CLASS ACTION COMPLAINT**

    **v.**

<u>**JURY TRIAL DEMANDED**</u>

CHOBANI LLC, CHOBANI HOLDINGS LLC,
CHOBANI GLOBAL HOLDINGS LLC,
CHOBANI INTERNATIONAL LLC,
CHOBANI IDAHO LLC,
  formerly known as CHOBANI, INC.,
  formerly known as AGRO-FARMA, INC.,

   **Defendants.**

---

   Plaintiff BARRY STOLTZ and Plaintiff ALLAN CHANG (collectively "Plaintiffs"), on

behalf of themselves and others similarly situated, by and through their undersigned attorneys,

hereby file this Class Action Complaint against Defendants, CHOBANI LLC, CHOBANI

HOLDINGS LLC, CHOBANI GLOBAL HOLDINGS LLC, CHOBANI INTERNATIONAL

LLC, CHOBANI IDAHO LLC  d/b/a Chobani (collectively "Defendants") and state as follows

based upon their own personal knowledge and the investigation of their counsel:

## INTRODUCTION

1.      Product labels have occupied an important role in assisting consumers in making healthy and informed food choices.

2.      Against this backdrop, with consumers demanding healthy options that fit their dietary and nutritional needs, Defendants market themselves as "America's Top Greek Yogurt." Defendants manufacture, market and sell Chobani® Greek yogurt products (herein referred to as the "Products," as such term is defined in Paragraph 21 below) throughout the United States.

3.      As part of their extensive and comprehensive nationwide marketing campaign, Defendants actively promote the naturalness and health benefits of the Products by using Product packaging, their website at www.chobani.com and social media outlets such as Facebook and Twitter to mislead consumers about their yogurt ingredients.

4.      Defendants purposefully misrepresented and continue to misrepresent to consumers that their Products (including products targeted to children),  contain "evaporated cane juice" even though "evaporated cane juice" is not "juice" at all – it is nothing more than sugar dressed up to sound like a healthier sweetener. Further, evaporated cane juice is not the common or usual name of any type of sweetener, or even a type of juice, and the use of such a name is false and misleading. Defendants uniformly list evaporated cane juice as an ingredient on the Products, as well as on their website located at www.chobani.com.

5.      Defendants also prominently display the number zero (shown as "0%") on the top and front of their Product packaging without providing any context as to what the 0% represents.

6.      Defendants intend to create consumer confusion by causing purchasers to impute any meaning to the 0% that consumers wish, such as that the Products lack sugar, carbohydrates, calories, or any other content which a consumer may believe is unhealthy. Defendants do so by

attempting to use similar marketing campaigns as Coke Zero and Pepsi Max, whom also display "Zero" or "0" on their products to indicate that the products are sugar-free or calorie-free. The labeling of "0%" on Defendants' packaging, without additional immediate context, is false and misleading.

7.      Defendants' Products typically contain about 16 grams of sugar per container, which is equivalent to 4 packets of sugar and is about as healthy as eating a Nestle Fudge ice cream bar, which contains 15 grams of sugar per serving. Defendants' Products do not contain 0% of sugar, the main cause of obesity in America. (*See* Gary Taubes, *Is Sugar Toxic*, New York Times, Apr. 13, 2011 at http://www.nytimes.com/2011/04/17/magazine/mag-17Sugar-t.html?pagewanted=all).

8.      Due to Defendants' marketing campaigns, consumers are led to believe that their Products are a healthy alternative when in reality they contain more sugar than regular cookies (*See* Paragraph 66 below). Defendants purposely mislead the public because Defendants willfully want the public to think the "0%" means no sugar or calories when consumers are shopping in supermarket aisles and only see the "0%," and not the fine print that shows how unhealthy and full of sugar the Products are.

9.      Moreover, Defendants purposefully market their Products as "Greek" yogurt when there is nothing "Greek" about the Products. None of the Products sold in the U.S. are made in Greece or made by Greek nationals even though Defendants market themselves as "America's Top Greek Yogurt."

10.     Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased for consumption and not resale any of the Products.

11.    Defendants' representations were and continue to be false and materially misleading. The FDA has specifically warned companies not to use the term "evaporated cane juice" because it is "false and misleading," does not accurately describe the ingredients utilized, and because "Evaporated Cane Juice" is not a juice.

12.    Defendants' actions constitute violations of the federal Food Drug & Cosmetic Act ("FDCA") Section 403(a)(1) (21 U.S.C. 343(a)(1)) and New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349, as well those similar deceptive and unfair practices and/or consumer protection laws in other states and the District of Columbia.

13.    Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

a.    Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak_ Code § 45.50.471, *et seq.;*
c.    Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
d.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
e.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
f.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
g.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
h.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
i.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
j.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
k.    Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
l.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
m.    Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
n.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
o.    Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
p.    Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
q.    Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
r.    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
s.    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
t.    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
u.    Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
v.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*w.* Michigan Consumer Protection Act, § § 445.901, *et seq.;*

*x.* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*y.* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*z.* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*aa.* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*bb.* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*cc.* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*dd.* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*ee.* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

*ff.* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

*gg.* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq. ;*

*hh.* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*ii.* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*jj.* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*kk.* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*ll.* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*mm.* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*nn.* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*oo.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq. ;*

*pp.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

*qq.* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*rr.* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act

*ss.* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*tt.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*uu.* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*vv.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*ww.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*xx.* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*yy.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

14.     Defendants' misbranding is intentional. While simultaneously marketing their Products as a healthy alternative, Defendants deceived the Plaintiffs and other consumers nationwide by mischaracterizing the sugar comprising the Products. Moreover, Defendants' Products are not Greek, are not manufactured in Greece, nor have anything to do with Greece or with Greek manufacturing methods or art. Finally, Defendants' "0%" claim is misleading as

reasonable consumers are not able to deduce the plain meaning of such claim and would naturally input any real or imagined claim to such label.

15.     As a direct result of Defendants' unlawful and deceptive sales practices, Chobani® has become the best-selling brand of Greek yogurt in the United States with an estimated sales revenue in 2012 of $1 billion. Defendants have collected billions of dollars from the sale of the Products that they would not have otherwise earned.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

17.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

18.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the Unites States Constitution.

19.     The Court has personal jurisdiction over Defendants because the Products are advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

20.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiffs are citizens of New York. Plaintiff CHANG resides in this District and purchased the Products from Defendants in this District. Moreover, Defendants manufactured, distributed, advertised, and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

21.    a) Plaintiff BARRY STOLTZ is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Westchester County. For the past three years, Plaintiff STOLTZ has purchased Chobani® Greek yogurt products with evaporated cane juice as an ingredient for personal consumption within the State of New York.

b) Plaintiff ALLAN CHANG is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Queens County. Over the past year, Plaintiff CHANG has purchased Chobani® Greek yogurt Products for personal consumption within the State of New York.

c) Plaintiffs have purchased Chobani® Greek yogurt in the flavors and product lines listed below (together, the "Products"):

| Fruit on the Bottom | Blended | Champions | Flip™ | Simply 100™ |
|---|---|---|---|---|
| Apple Cinnamon | | | | |
| Apricot | | | | |
| Banana | | | | |
| Blackberry | | | | |
| Blood Orange | | | | |
| Blueberry | Black Cherry | | | |
| Mango | Blueberry | Blueberry | | |
| Passion Fruit | Coconut | Chillin' Cherry | | |
| Peach | Key Lime | Dragon Fruit | Almond Coco Loco | |
| Pear | Lemon | Flyin Dragon Fruit | Blueberry Power | |
| Pineapple | Orange Vanilla | Jammin' Strawberry | Tropical Escape | Blueberry |
| Pomegranate | Pineapple | Rockin Blueberry | Peachy Pistachio | Peach |
| Raspberry | Strawberry | Strawberry | Key Lime Crumble | Pineapple |
| Strawberry | Strawberry Banana | Swirlin Strawberry Banana | Nutty for Nana | Strawberry |
| Strawberry Banana | Vanilla | Very Berry | Vanilla Golden Crunch | Vanilla |

Plaintiffs purchased the Products from various local stores. Plaintiff CHANG has purchased the Products from stores located in Queens County, including but not limited to Duane Reade, Stop & Shop and Veggie Monster in Queens, New York. Plaintiff STOLTZ has purchased the Products from local stores located in Westchester County as well as from chain supermarkets, including but not limited to a Shoprite located in the town of Scarsdale and a Stew Leonard's in Yonkers, New York. Plaintiff CHANG has purchased the Products for the past year in various sizes and product lines as they have become available. Plaintiff STOLTZ has purchased the Products for the past three years in various sizes and product lines as they have become available. The purchase price ranged from $1.59 for a 5.3 oz. container to $5.99 for a 32 oz. container.

22.     a) Defendant CHOBANI, LLC is a limited liability company organized under the laws of Delaware with a principal executive office and address for service of process located at 147 State Highway 320, Norwich, New York, 13815. Defendant CHOBANI LLC was formerly known as CHOBANI, INC. and prior to that was known as AGRO-FARMA, INC.

b) Defendant CHOBANI HOLDINGS, LLC is a limited liability company organized under the laws of Delaware with an address for service of process located at 147 State Highway 320, Norwich, New York 13815.

c) Defendant CHOBANI GLOBAL HOLDINGS, LLC is a limited liability company organized under the laws of Delaware with an address for service of process located at 147 State Highway 320, Norwich, New York 13815.

d) Defendant CHOBANI INTERNATIONAL, LLC is a limited liability company organized under the laws of Delaware with an address for service of process located at 147 State Highway 320, Norwich, New York 13815.

e) Defendant CHOBANI IDAHO, LLC is a limited liability company organized under the laws of Delaware with an address for service of process located at 147 State Highway 320, Norwich, New York 13815.

f) Defendants operate as a single integrated and common enterprise. Together, the Defendants are jointly engaged in the manufacturing, distributing, advertising, marketing, and selling of the Products to hundreds of thousands of consumers nationwide, including New York. In 2012, Defendants were ranked the 117th fastest growing enterprise in the United States, logging an explosive three year growth rate of 2,662%. *See* http://www.inc.com/profile/chobani.

## FACTUAL ALLEGATIONS

23.     Defendants manufacture, distribute, market, and sell yogurt throughout the United States, and proclaim on their website that the Products are "made with only natural ingredients." Defendants further claim that the Products contain "No artificial flavors or sweeteners," "No preservatives," and that the sugar in the Products "come from milk (lactose), real fruit (fructose), honey and evaporated cane juice (which is less processed than white table sugar and is used to sweeten the fruit, vanilla and chocolate chunk preps used in our authentic strained Greek yogurt products."

24.     The Products are available at  most supermarket chains and other retail outlets throughout the United States, including but not limited to Walmart, Costco, Target, CVS, Walgreens, Rite Aid and Duane Reade. Defendants also maintain their own company store, Chobani SoHo, located at 152 Prince Street, New York, NY 10012.

**Defendants Make Unlawful ECJ Claims**

25.     Defendants deceptively advertise and market all of the Products using the term evaporated cane juice ("ECJ"), a term that is a false and misleading name for another less healthy food or ingredient that has a common or usual name -- sugar.

26.     Defendants use the term ECJ on all the Product packaging. Defendants use the term ECJ to make their Products appear healthier than others that contain "sugar" as an ingredient in order to increase sales and charge a premium.

27.     Plaintiffs and nationwide consumers were misled when they relied upon the use of the term ECJ on Defendants' packaging, assuming it was healthier than regular sugar.

28.     Sugar cane products exist in many different forms, ranging from raw sugars and syrups to refined sugar and molasses. These products are differentiated by their moisture,

10

molasses, and sucrose content as well as by crystal size and any special treatments. Sugar cane products are required by regulation (21 C.F.R. § 101.4) to be described by their common or usual names, "sugar" (21 C.F.R. § 101.4(b)(20) and 21 C.F.R. § 184.1854) or "cane syrup" (21 C.F.R. § 168.130). Other sugar cane products have common or usual names established by common usage such as molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar and demerara sugar.

29.    The FDA has instructed that sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "dehydrated cane juice" or "evaporated cane juice." In fact, the FDA's published policy states that "evaporated cane juice" is simply a deceptive way of describing sugar, and therefore, it is false and misleading to dress up sugar as a type of "juice". See http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.html.

30.    Defendants sell the Products using the deceptive ingredient name "Evaporated Cane Juice", including but not limited to the following Products:

**Chobani® Greek Yogurt – Fruit on the Bottom**

| Product | Label Violation/Misrepresentation |
| --- | --- |
| Apple Cinnamon | http://www.chobani.com/Products/fruit-on-the-bottom#apple-cinnamon |
| Apricot | http://www.chobani.com/Products/fruit-on-the-bottom#apricot |
| Banana | http://www.chobani.com/Products/fruit-on-the-bottom#banana |
| Blackberry | http://www.chobani.com/Products/fruit-on-the-bottom#blackberry |
| Black Cherry | http://www.chobani.com/Products/fruit-on-the-bottom#black-cherry |
| Blood Orange | http://www.chobani.com/Products/fruit-on-the-bottom#blood-orange |
| Blueberry | http://www.chobani.com/Products/fruit-on-the-bottom#blueberry |
| Mango | http://www.chobani.com/Products/fruit-on-the-bottom#mango |
| Passion Fruit | http://www.chobani.com/Products/fruit-on-the-bottom#passion- |

| | fruit |
|---|---|
| Peach | http://www.chobani.com/Products/fruit-on-the-bottom#peach |
| Pear | http://www.chobani.com/Products/fruit-on-the-bottom#pear |
| Pineapple | http://www.chobani.com/Products/fruit-on-the-bottom#pineapple |
| Pomegranate | http://www.chobani.com/Products/fruit-on-the-bottom#pomegranate |
| Raspberry | http://www.chobani.com/Products/fruit-on-the-bottom#raspberry |
| Strawberry | http://www.chobani.com/Products/fruit-on-the-bottom#strawberry |
| Strawberry Banana | http://www.chobani.com/Products/fruit-on-the-bottom#strawberry-banana |

**Exemplar label:**



**Chobani® Greek Yogurt – Blended**

| Product | Label Violation/Misrepresentation |
|---|---|
| Black Cherry | http://www.chobani.com/Products/blended#black-cherry |
| Blueberry | http://www.chobani.com/Products/blended#blueberry |
| Coconut | http://www.chobani.com/Products/blended#coconut |
| Key Lime | http://www.chobani.com/Products/blended#key-lime |
| Lemon | http://www.chobani.com/Products/blended#lemon |
| Orange Vanilla | http://www.chobani.com/Products/blended#orange-vanilla |
| Pineapple | http://www.chobani.com/Products/blended#pineapple |
| Strawberry | http://www.chobani.com/Products/blended#strawberry |
| Strawberry Banana | http://www.chobani.com/Products/blended#strawberry-banana |
| Vanilla | http://www.chobani.com/Products/blended#vanilla |
| Vanilla Chocolate Chunk | http://www.chobani.com/Products/blended#vanilla-chocolate-chunk |

**Exemplar label:**



**Chobani® Greek Yogurt – Simply 100™**

| Product | Label Violation/Misrepresentation |
| --- | --- |
| Black Cherry | http://www.chobani.com/Products/simply-100#black-cherry |
| Blueberry | http://www.chobani.com/Products/simply-100#blueberry |
| Peach | http://www.chobani.com/Products/simply-100#peach |
| Pineapple | http://www.chobani.com/Products/simply-100#pineapple |
| Strawberry | http://www.chobani.com/Products/simply-100#strawberry |
| Vanilla | http://www.chobani.com/Products/simply-100#vanilla |

**Exemplar label:**



**Chobani® Greek Yogurt – Flip™**

| Product | Label Violation/Misrepresentation |
|---|---|
| Almond Coco Loco | http://www.chobani.com/products/flip#almond-coco-loco |
| Blueberry Power | http://www.chobani.com/products/flip#blueberry-power |
| Honey Bee Nana | http://www.chobani.com/products/flip#honey-bee-nana |
| Key Lime Crumble | http://www.chobani.com/products/flip#key-lime-crumble |
| Nutty for Nana | http://www.chobani.com/products/flip#nutty-for-nana |
| Peachy Pistachio | http://www.chobani.com/products/flip#peachy-pistachio |
| Raspberry Choco Fix | http://www.chobani.com/products/flip#raspberry-choco-fix |
| Strawberry Sunrise | http://www.chobani.com/products/flip#strawberry-sunrise |
| Tropical Escape | http://www.chobani.com/products/flip#tropical-escape |
| Vanilla Golden Crunch | http://www.chobani.com/products/flip#vanilla-golden-crunch |

**Exemplar label:**



**Chobani® Greek Yogurt – Champions (Kids)**

| Product | Label Violation/Misrepresentation |
|---|---|
| Blueberry | http://www.chobani.com/Products/kids#blueberry |
| Chillin' Cherry | http://www.chobani.com/Products/kids#chillin-cherry |
| Dragon Fruit | http://www.chobani.com/Products/kids#dragon-fruit |
| Flyin Dragon Fruit | http://www.chobani.com/Products/kids#flyin-dragon-fruit |
| Jammin' Strawberry | http://www.chobani.com/Products/kids#jammin-strawberry |
| Rockin Blueberry | http://www.chobani.com/Products/kids#rockin-blueberry |
| Strawberry | http://www.chobani.com/Products/kids#strawberry |
| Swirlin Strawberry Banana | http://www.chobani.com/Products/kids#swirlin-strawberry-banana |
| Very Berry | http://www.chobani.com/Products/kids#very-berry |
| Vanilla Chocolate Chunk | http://www.chobani.com/Products/kids#vanilla-chocolate-chunk |
| Strawberry & Blueberry | http://www.chobani.com/Products/kids#strawberry-blueberry |
| Strawberry Banana & Cherry | http://www.chobani.com/Products/kids#strawberry-banana-cherry |

**Exemplar labels:**



16



**Defendants' General Misrepresentations**

31.    On Defendants' website, http://www.chobani.com/our-craft, they state under the heading "Craft" that "[h]ow we make our product matters, a cup of yogurt won't change the world, but how we make it might." Defendants' website continues to state that the third prong in their process is "Natural Ingredients...Then we take care to add only real fruit and natural sweeteners. It's a thoughtful process that, unlike some of the other guys, ensures we never use preservatives." Such narrative sells and misrepresents as truth that Defendants' Products are healthier than other products sweetened with "sugar." However, the Products are sweetened with regular sugar just as any other competitor yogurt.

32.    On Defendants' website, www.chobani.com, under FAQ (frequently asked questions), they further mislead nationwide consumers with purposeful misrepresentations as to their Products' health benefits when the Products contain significant amounts of sugar:

       a.    Under "Why Choose Chobani?" Defendants state "Chobani contains only natural ingredients so it's a naturally good for you indulgence...Plus, our

authentic straining process results in a rich and creamy yogurt, so it's a good-for-you-way to satisfy your cravings."

b.  Under "How does the Fruit on the Bottom of your Flavored Chobani Taste So Fresh?" Defendants claim "We use only the highest quality real fruit—no goopy jelly here."

c.  Under "Does Chobani contain any Artificial Sweeteners?" Defendants claim "No. We use wholesome milk and real fruit to craft our Chobani Greek Yogurt Products. The sugars found in our products come from milk (lactose), real fruit (fructose), honey and evaporated cane juice (which is less processed than white table sugar and is used to sweeten the fruit, vanilla and chocolate chunk preps used in our authentic strained Greek yogurt products)." Such description is misleading. Defendants should say they sweeten their Products with plain old sugar, as their competitors Dannon, Stonyfield Farms, and Yoplait do.

33.  As detailed above, Defendants' Products are not low in sugar and are no different from other drinks or yogurts that are packed with sugar. The Nutrition Facts for the Products purchased by Plaintiffs ranged from thirteen (13) to twenty-three (23) grams of sugar, but the ingredient sections failed to list "sugar" as an ingredient in each instance. Similarly, Defendants' Champions yogurt line for kids purchased by Plaintiffs state that they have thirteen (13) grams of sugar, but the ingredient section fails to list "sugar" as an ingredient. Thirteen grams of sugar equals 3 to 6 packets of sugar (and is more sugar than is present in a serving of Jolly Rancher hard candy or Tootsie Pop). Thirteen grams of sugar is also the same amount of sugar present in a Charms Blow Pop lollipop and is almost the same amount of sugar in a Nestle Fudge ice cream

bar (15 grams of sugar). Defendants' Products are not healthy or "good for you," are glorified junk food and can be a contributor to obesity, diabetes and heart disease.

34.     Defendants identify "Evaporated Cane Juice" as an ingredient on their Product labels, despite the fact that the U.S. Food and Drug Administration (herein "FDA") has specifically warned companies not to use the term "Evaporated Cane Juice" because (1) it is "false and misleading," (2) its use is in violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and (3) the ingredient in question is not a juice.

35.     In October of 2009, the FDA issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, which advised industry that:

> [T]he term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. **However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice...**
>
> "Juice" is defined by CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree."...
>
> As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food...shall be listed by common or usual name..." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(a))...
>
> Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)...
>
> **The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup.** Because cane syrup has a standard of identity

defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

**Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5.** Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/labelingn utrition/ucm181491.htm (emphasis added)

36.     The FDA's position is thus clear that "evaporated cane juice" labels are "false and misleading." Despite the issuance of the 2009 FDA Guidance, Defendants did not remove the unlawful and misleading term from their misbranded Products.

37.     Under the Federal Food Drug and Cosmetic Act (herein "FDCA"), the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If any one representation in the labeling is misleading, the entire food is misbranded. No other statement in the labeling cures a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove that anyone was actually misled.

38.     Another tactic employed by Defendants in their effort to make the Products appear healthier is to list the daily value of the Fruit on the Bottom Products as "0%" on their website. The daily value ("DV") is a general guide created by the FDA that permits consumers to understand if a serving is high or low in a particular nutrient. A general rule is a DV of 5% or

less means that a nutrient is low, while a DV of 20% or more means that a nutrient is high. The

FDA has stated that "[n]o daily reference value has been established for sugars because no

recommendations have been made for the total amount to eat in a day." As a result, sugar content

in a serving is expressed to the nearest gram on a nutrition facts label but typically no daily value

is included. See exemplar FDA label below:



http://www.fda.gov/food/ingredientspackaginglabeling/labelingnutrition/ucm274593.htm

(as appeared on 6/4/14)

39.     On their website, Defendants include the nutrition facts for all of their Products

and prominently display a "0%" as the daily value for sugar in their Fruit on the Bottom

Products. See exemplar labels below:



http://www.chobani.com/products/fruit-on-the-bottom#black-cherry (as appeared on 6/4/14)

http://www.chobani.com/products/fruit-on-the-bottom#apple-cinnamon (as appeared on 6/4/14)

A reasonable consumer is likely to believe that 1) there is an established daily value for sugar and 2) that the grams of sugar present in the Fruit on the Bottom Products are well below the recommended daily value.

40.     Defendants purposefully mislead consumers into paying a premium price for the Products that do not satisfy the minimum standards established by law for those products and for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

**Champions (Kids Yogurt line) Misrepresentations**

41.     Unfortunately for consumers and their children, Defendants' Products are not as healthy and nutritious as they purport to be. Defendants willfully and purposefully seeks to conceal the added sugar in their Products from nationwide consumers.

42.     The ingredients in Defendants' regular yogurt Products are nearly identical to Defendants' Champions yogurt line geared towards kids with the exception that the Champions line also contains Vitamin D3. See ingredients list below:



| Fruit on the Bottom – Strawberry | Champions – Kids Strawberry |
|---|---|
| **Ingredients**<br><br>Nonfat Yogurt (Cultured Pasteurized Nonfat Milk), Live and Active Cultures: S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus and L. Casei, Strawberries, Evaporated Cane Juice, Pectin, Natural Flavors, Locust Bean Gum, Fruit and Vegetable Juice Concentrate (For Color).<br><br>http://www.chobani.com/Products/fruit-on-the-bottom#strawberry | **Ingredients**<br><br>Nonfat Yogurt (Cultured Pasteurized Nonfat Milk), Live and Active Cultures: S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus and L. Casei, Cream, Evaporated Cane Juice, Strawberries, Locust Bean Gum, Pectin, Natural Flavors, Fruit and Vegetable Juice Concentrate (For Color), Vitamin D3.<br><br>http://www.chobani.com/Products/kids#strawberry |

43.     Defendants' Champions yogurt line is specifically designed for and marketed to children, making the deception that much more pernicious and outrageous.

44.     Defendants' packaging on the Champions Products prominently display pictures of anthropomorphized fruit along with the phrase "Made Just For Kids" in an effort to simultaneously target children and health conscious parents.

45.     For each Champions yogurt flavor, Defendants use cartoon-like marketing to target children. For instance, the Champions "Flying Dragon Fruit" yogurt packaging displays a colorful image of fruit with arms and wings. See below:



46.     Defendants also deceptively market their Champions line to parents seeking healthy options for their children.

47.     Given the prevalence of obesity in the United States, parents are desperate for healthy options in the supermarket aisles. In touting that Chobani's founder and CEO "believed everyone deserved better options, so he set about making delicious, nutritious, natural and

accessible Greek yogurt…" while intentionally failing to list sugar as an ingredient, Defendants are misleading parents into purchasing their Products.

**Defendants' "0%" Misrepresentations**

48.     Defendants' "Fruit on the Bottom" and "Blended" Products also prominently display the number zero percent (shown as "0%") on the top and front of their Product packaging without any indication as to what the value pertains to. See exemplar labels below:









49.    Plaintiffs and the Class are left to guess the meaning of the "0%" since Defendants fails to provide any context. For instance, from Defendants' own detailed Product label in the 'Nutrition Facts" section of the Blueberry Blended yogurt, there are 0 calories from fat, 0 grams of trans fat, 0% saturated fat, 0% total fat, 0% vitamin A and 0% iron. Similarly, the

Nutrition Facts section of the Fruit on the Bottom Strawberry yogurt states that there are 0 calories from fat, 0 grams of trans fat, 0% saturated fat, 0% total fat, 0% vitamin A and 0% iron in the Product. Defendants' Products contain various 0%'s in the "Nutrition Facts" section. See exemplar label below:



50.     It is unclear what the "0%" on the front label of Defendants' Product packaging refers to, as it could be imputed to refer to any number of items, and reasonable consumers may attach any meaning to these representations. For instance, a "0%" similarly appears on some popular beverage products such as Pepsi Max to indicate that the product contains no calories, carbohydrates or sugar. See exemplar label below.



51.     Similarly, Coca Cola prominently displays "Zero" on the front label of its Coca Cola Zero product to indicate that it lacks calories. See exemplar label below:



52.     Plaintiffs believe that Defendants are piggy-backing off of the "0"/"Zero"
advertising campaigns which market no calorie or sugar in products when Defendants' Products,
in fact, are packed with sugars and unhealthy calories.

53.     Defendants are contributing to America's obesity problem when half of all
Americans are overweight. If a consumer ate as much of the Products as they liked, they would
likely become obese. See sugar content of the "Fruit on the Bottom" and "Blended" Products
below:

| Fruit on the Bottom | Sugar Content (in grams) |
|---|---|
| Apple Cinnamon | 16g |
| Apricot | 15g |
| Banana | 16g |
| Blackberry | 15g |
| Blood Orange | 15g |
| Blueberry | 15g |
| Black Cherry | 17g |
| Mango | 16g |
| Passion Fruit | 15g |
| Peach | 15g |
| Pear | 15g |
| Pineapple | 15g |
| Pomegranate | 15g |
| Raspberry | 16g |
| Strawberry | 15g |
| Strawberry Banana | 16g |

| Blended | Sugar Content (in grams) |
|---|---|
| Black Cherry | 24g |
| Blueberry | 23g |
| Coconut | 13g |
| Key Lime | 16g |
| Lemon | 15g |
| Orange Vanilla | 16g |
| Pineapple | 23g |
| Strawberry | 23g |
| Strawberry Banana | 16g |
| Vanilla | 16g |

As stated previously, a Nestle Fudge ice cream bar contains 15 grams of sugar. Eating a Chobani® yogurt is no different (in fact, many times may be worse) than eating ice cream because its sugar content may be higher.

54.     Defendants' competitors also use a "0%" on their packaging but make clear that the value pertains to their products' fat content only. See exemplar labels below:



55.     Particularly appropriate is that Stonyfield specifies that the 0% only relates to fat, but also concurrently discloses its caloric content up front so as not to confuse consumers that the "0%" could relate to calorie count. This disclosure fully informs the consumers so as to not cause them to believe they can eat as much yogurt as possible without the caloric debt.

56.     Defendants ensure an unfair advantage over their competitors above by failing to disclose to consumers in a clear manner whether their "Fruit on the Bottom" and "Blended" Products with a "0%" are free of fat, sugar, caffeine, carbohydrates,  and/or calories. Reasonable consumers are left to impute any meaning to the prominent "0%" on the Products.

57.     Although Defendants' "Fruit on the Bottom" and "Blended" Products also say "Non-Fat Yogurt" in small print, consumers may reasonably believe that "0%" does not refer to

"0%" fat as it would make no sense to have similarly redundant claims and it is even more reasonable to conclude that "0%" means zero calories or other claims.

**Defendants' "Greek" Claims**

58.     Defendants market Chobani® as "America's number one Greek yogurt." As a result, Plaintiffs and consumers are led to reasonably believe that the Products are Greek in origin when in fact, they are not. The name of the brand itself is not Greek. "Chobani" is derived from the Turkish language, where "çoban" means "shepherd." Chobani's founder and CEO is not Greek. He is a native of Turkey who moved to New York and opened his yogurt plant in Central New York. Further, the Products sold in the U.S. are not manufactured in Greece but solely within the U.S.

59.     Defendants state the following in the "Frequently Asked Questions" page of their website:

> WHAT'S GREEK ABOUT CHOBANI?
>
> The word "Greek" describes how we make the yogurt in our products. We make our yogurt the authentic way, never adding any thickeners.
>
> Instead, we use a centuries-old technique of straining to remove excess liquid. This is why Chobani is so thick, creamy and has two times more protein per serving than regular yogurt.
>
> http://www.chobani.com/faqs

Defendants continue to mislead consumers as the straining process referenced above is not unique to Greece. Several other nations in the Middle Eastern region have been attributed with being the place of origin of the strained yogurt method, including Turkey, Lebanon and Syria.

60.    Defendant states that "Greek" refers to how the Products are made and not their place of origin but purposefully fail to make this fact clear on the Product packaging. Defendants could easily inform consumers that "Greek" yogurt refers to the manufacturing process by labeling their Product "Greek-Style" or "Greek Strained" on the packaging as other products do. See exemplar labels below:






Instead, Defendants choose to label the Products "Greek Yogurt," thereby causing the reasonable consumer to believe that their Products are made in Greece and imported from Greece.

**Defendants' Misrepresentations in Social Media**

61.     In furtherance of their efforts to deceive consumers as to the contents of their Products, Defendants posted the following on their Facebook page along with a message stating "We like our fruit from a tree, not a lab":



(*See* Facebook Timeline Photos at

https://www.facebook.com/photo.php?fbid=10151899914736852&set=a.187018951851. 136926.27486451851&type=1&theater, as appeared on 3/11/14).

62.    Another Facebook post by Defendants states "Artificial ingredients don't grow on trees. Fruit does" and displays the following:



(*See* Facebook Timeline Photos at

https://www.facebook.com/photo.php?fbid=10151888126426852&set=a.187018951851. 136926.27486451851&type=1&theater, as appeared on 3/11/14).

63.    The statements and images above mislead consumers into believing that Defendants' Products are healthier than other products because they purport to contain only natural ingredients. In an effort to further this misrepresentation, Defendants have begun to use the inside of their Product packaging to make additional claims about their Products' naturalness.

A consumer opening a container of Defendants' Fruit on the Bottom yogurt may find the following message inside the lid:

> Mother Nature made the ingredients.
> We just put them in a cup.
> CHOBANI®
> HOW MATTERS™

64.     Defendants are particularly deceptive in their messaging regarding the sugar in their Products since "Mother Nature" does not artificially condense and concentrate the sweetness of juice into ECJ, which is not naturally occurring. One Facebook post by Defendants states "Most 100-calorie yogurts use artificial sweeteners. We think Mother Nature's sweet enough" and displays the following:

35



65.     The image above blatantly attempts to mislead consumers into believing that evaporated cane juice is a completely different ingredient than regular sugar and Defendants appear to be succeeding. In response to the image above, on March 2, 2014, one consumer, Joe Ballenger, asked Defendants "Just out of curiosity, how is evaporated cane juice better than sugar?" (*See* Facebook Timeline Photos at https://www.facebook.com/photo.php?fbid=10151886750601852&set=a.187018951851.136926. 27486451851&type=1&theater, as appeared on 3/11/14). Defendants never replied to the inquiry despite almost always answering consumer queries.

66.     Defendants' marketing campaign is intended to mislead consumers into believing that the Products are healthy and nutritious when they are not. One container of Defendants' Black Cherry flavored Blended yogurt has significantly more sugar in a serving than Chips Ahoy cookies or Oreo cookies. See below:

| Product | Sugar content per serving (in grams) |
|---------|--------------------------------------|
| Chobani Blended – Black Cherry | 24 |
| Nabisco Oreo Sandwich Cookies | 14 |
| Nabisco Oreo Double Stuf Cookies | 13 |
| Nabisco Chips Ahoy Cookies - Original | 11 |

67.     Consumption of the Products is not part of a healthier lifestyle as the Products have no health benefits and are comparable to eating junk food.

68.     Plaintiffs and the Class paid a premium price for the Products. Plaintiffs paid the following for the Products as follows:

| | |
|---|---|
| Fruit on the Botttom 5.3 oz. | $1.59 |
| Greek Yogurt 5.3 oz. (each) 4 pack | $3.99 |
| Blended 5.3 oz. | $1.59 |
| Greek Yogurt 16 oz. | $3.99 |
| Greek Yogurt 32 oz. | $5.99 |
| Champions 3.5 oz. (each) 4 pack | $3.69 |
| Simply 100 5.3 oz. | $1.59 |
| Simply 100 5.3 oz. (each) 4 pack | $3.99 |

Similar Products (i.e., non-Greek, non "0%" and non ECJ products) made by Defendants' competitor Dannon are sold at Shoprite as follows:

| Dannon Yogurt Light & Fit 6 oz. | 10 for $5.00 |
|---|---|
| Dannon 99% Fat Free Fruit on the Bottom 6 oz. | $3.49 |

Similar Products made by Defendants' competitor Yoplait are sold at Shoprite as follows:

| Yoplait Original Yogurt 6 oz. | 5 for $4.00 |
|---|---|
| Yoplait Light Yogurt 6 oz. | 5 for $4.00 |

69.     Through their deceptive practice of marketing and selling the Products, Defendants were able to command a premium price by deceiving consumers about the attributes of the Products and distinguishing themselves from similar products. For example, Defendants' "Fruit on the Bottom" Products command a 275% price premium per fluid ounce, over Dannon's Light and Fit yogurt, a competing brand. Defendants were motivated to mislead consumers for no other reason than to take away market share from competing products, thereby increasing their own profits.

70.     Plaintiffs and the Class have been damaged by Defendants' deceptive and unfair conduct in that they purchased a misbranded Product or paid prices they otherwise would not have paid had Defendants not misrepresented their Products' ingredients.

## CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

38

> Excluded from the Class are current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

72.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

73.     This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

74.     Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

    a.   whether listing sugar as ECJ on their Products is false and misleading;

    b.   whether listing the ingredient "evaporated cane juice" is misleading because it is not "juice";

    c.   whether identifying sugar as ECJ renders the Greek yogurt Products at issue misbranded;

    d.   whether Defendants failed to disclose to consumers that ECJ is an unlawful term that is merely sugar;

    e.   whether Defendants engaged in a marketing practice intended to deceive consumers by substituting the term ECJ for sugar in their Greek yogurt Products;

    f.   whether Defendants properly identified their Products as "Greek" yogurt when they are not made in Greece, made by Greek national, nor use any manufacturing methods or arts particular to the culture or nation of Greece;

    g.   whether displaying "0%" on the top and front label of their Products without additional context is deceptive and/or misleading;

    h.   whether Defendants have been unjustly enriched at the expense of Plaintiffs and the other Class members by their misconduct;

    i.   whether Defendants must disgorge any and all profits they have made as a result of their misconduct; and

    j.   whether Defendants should be barred from marketing their Greek yogurt Products as listing ECJ as an ingredient.

75.    Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased Defendants' Products during the Class Period and sustained similar injuries arising out of Defendants' conduct in violation of New York State law. Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendants' wrongful misconduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

76.     Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class.   Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

78.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

79.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class

predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

80.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

81.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

82.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 81 herein and further allege as follows:

83.     Plaintiffs bring this claim individually and on behalf of the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL").

84.     NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

85.     Any person who has been injured by reason of any violation of the NY GBL may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its

discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

86.     The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their Products are "Greek," contain ECJ and are labeled "0%" without additional context are unfair, deceptive, and misleading and are in violation of the N.Y. Agric. and Markets Law § 201 in that said Products are misbranded.

87.     The foregoing deceptive acts and practices were directed at consumers.

88.     Defendants should be enjoined from marketing their Products as containing ECJ and should be enjoined from displaying a "0%" on the top and front label Product packaging and as part of their marketing campaign and should be enjoined from labeling the Products as "Greek" Yogurt without additional context as described above pursuant to NY GBL § 349.

89.     Plaintiffs, on behalf of themselves and all others similarly situated, respectfully demand a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

90.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 89 herein and further alleges as follows:

91.     Plaintiffs bring this claim individually and on behalf of the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349.

92.     By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products as "Greek," as containing ECJ and labeled "0%" without additional context.

93.     The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their Products are "Greek," contain ECJ, and are labeled "0%" without additional context are unfair, deceptive, and misleading and are in violation of the N.Y. Agric. and Markets Law § 201 in that said Products are misbranded.

94.     Defendants should be enjoined from marketing their Products as containing ECJ and should be enjoined from displaying a "0%" on the top and front label Product packaging and as part of their marketing campaign and should be enjoined from labeling the Products as "Greek" Yogurt without additional context as described above pursuant to NY GBL § 349.

95.     The foregoing deceptive acts and practices were directed at consumers.

96.     Plaintiffs and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, as a result of Defendants' deceptive and unfair trade acts and practices, Plaintiffs and the other Class members suffered monetary losses associated with the purchase of Defendants' "Greek" yogurt Products with ECJ and/or with a "0%" on the top and front label Product packaging, *i.e.*, the purchase price of the Product and/or the premium paid by Plaintiffs and the Class for said Products.

## COUNT III

### NEGLIGENT MISREPRESENTATION
### (All States and the District of Columbia)

97.     Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 96 of this Complaint, as if fully set forth herein.

44

98.     Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

99.     In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants have failed to fulfill their duty to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

100.    Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

101.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, which reliance was justified and reasonably foreseeable.

102.    As a result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**COUNT IV**

**BREACH OF EXPRESS WARRANTIES**
**(All States and the District of Columbia)**

103.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 102 of this Complaint, as if fully set forth herein.

104.    Defendants provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that their Products are "lightly sweetened with…organic evaporated cane juice" and are perfect for "anyone who requires liquid nutrition" and "organic nutrient dense energy any time."

105.    Defendants breached these warranties by providing yogurt Products that claim to be "Greek," fail to mention sugar as an ingredient and/or display a "0%" on the top and front label Product packaging. As part of their extensive marketing campaign, Defendants also uses their website to list "0%" as the nutritional daily value for sugar in their Fruit on the Bottom Products.

106.    This breach resulted in damages to Plaintiffs and the other members of the Class who bought Defendants' Products but did not receive the goods as warranted in that the Products were not as healthy as they appear to be.

107.    As a proximate result of Defendants' breach of warranties, Plaintiffs and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendants promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

## COUNT V

### UNJUST ENRICHMENT
### (All States and the District of Columbia)

108.    Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 107 of this Complaint, as if fully set forth herein.

109.   Defendants received certain monies as a result of their uniform deceptive marketing of their yogurt Products as "Greek", with ECJ and/or displaying a "0%" on the top and front label Product packaging and in their marketing campaigns that are excessive and unreasonable.

110.   Plaintiffs and the Class conferred a benefit on Defendants through purchasing their "Greek" yogurt Products with ECJ and/or displaying a "0%" on the top and front label Product packaging and in their marketing campaigns, and Defendants have knowledge of this benefit and has voluntarily accepted and retained the benefits conferred on it.

111.   Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

A.   For an order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

B.   For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.   For an order finding in favor of Plaintiffs and the nationwide Class;

D.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper;

H.      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.      Any other relief the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: June 19, 2014

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By: _____
C.K. Lee, Esq.